**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THOMAS J. PERNICE, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ERIC BOVIM, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 15-541 (JEB)** |

**MEMORANDUM OPINION**

Without the assistance of hindsight, ill-fated corporate combinations, like bad marriages, may be as challenging to resist as they are unlikely to succeed. The coupling at the center of this case is no different. At first so alluring, the union of two public-relations firms has now soured, leaving one of the participants believing he was lured into formalizing the relationship with false promises. That jilted partner, Thomas Pernice, and his holding company, Modena Holding Corp., now seek relief from this Court. They have sued three defendants – McBee Strategic Consulting, LLC; its former owner and Chief Executive, Steven McBee; and its current employee (and Pernice's former business partner), Eric Bovim – each for some combination of breach of contract, fraud, civil conspiracy, and unjust enrichment. Defendants now move to dismiss in part, contending that three of the five asserted counts are facially deficient. The Court agrees and will grant the Motion.

## I. Background

Although the Court must accept the facts as alleged in the Complaint as true at this stage, the parties appear to agree on the rough contours of the case. Sometime in 2007 or 2008, Thomas Pernice and Eric Bovim, both known players in the District's strategic-communications

industry, teamed up to start a public-relations firm named Gibraltar LLC. See Compl., ¶¶ 15–16, 19. Despite a rocky and often tumultuous relationship between the two principals, the business survived its infancy, growing into an enterprise that, by 2011, had captured the attention of a competitor: McBee LLC. Id., ¶¶ 26, 41.

In the latter half of 2011, the two companies flirted with the idea of starting a formal corporate relationship, bringing in a D.C. law firm to chaperone the negotiations. Id., ¶ 42. A big sticking point was whether, if McBee LLC acquired Gibraltar and hired its two principals, they would be entitled to an equity stake in their new corporate home. Id., ¶ 43. At the time, McBee LLC did not have an equity-sharing program for its employees, but the firm's head, Steven McBee, represented to Pernice and Bovim that McBee LLC had been working to develop one, and that, if it did, they would be among the first to receive an equity stake. Id.

The negotiations resulted in a Letter of Intent indicating that the two firms "desire[d] to enter into a business combination" subject to a five-page list of "non-binding terms." See Mot., Declaration of Richard W. Smith, Exh. B (Letter of Intent) at 1.[1] As part of that plan, McBee LLC proposed hiring Bovim and bringing on Pernice as an independent consultant through his S-Corporation, Modena, for an 18-month term. Id. at 3–4. The letter also stated in non-committal terms that McBee LLC "intends to implement a new compensation system, which will contain an equity, profit sharing, or a similar component," and that Modena "will be included in such compensation system either directly or by some reasonable approximation as the plan may allow." Id. at 3.

[1] Defendants Bovim and McBee LLC move to dismiss separately from Defendant Steven McBee. This Opinion cites only to Bovim and McBee LLC's briefs, which largely subsume the arguments advanced by McBee in his individual capacity, and to Plaintiffs' Opposition to the Bovim/McBee LLC Motion.

On January 1, 2013, the parties moved ahead with the combination, opting to join forces with an asset purchase agreement (APA) in which McBee LLC agreed to buy Gibraltar's pipeline of contracts for a price of $100,000. See Compl., ¶¶ 57, 59; Smith Decl., Exh. A (APA) at Schedule 1.2 (listing assets Gibraltar agreed to sell under APA). The agreement included several key features relevant to this dispute.

First, it provided that, as a prerequisite to closing, both sides had to ensure that a contract for independent-consulting services (the IC Agreement) between McBee LLC and Modena was fully executed. See APA at 12–13. That contract, which was attached to the purchase agreement as a separate exhibit, id. at 2, largely mirrored the terms that had been agreed to in the Letter of Intent. McBee LLC would pay Modena a monthly retainer of $80,166 for 18 months, and, if McBee LLC fired Modena without cause before such term expired, McBee LLC would be on the hook for the remainder of the payments. See Smith Decl., Exh. C (IC Agreement) at 1–2.

Second, unlike the Letter of Intent, the APA made no mention of an equity-sharing or other compensation program. The IC Agreement, in contrast, did, albeit in wholly conditional terms – stating that, "[i]f McBee [LLC] implements an equity incentive program in which [Modena] is offered participation, [Modena's] Retainer Fee may be replaced or adjusted" should Modena participate in the program. Id. at 1 (emphasis added).

Third, under the APA, McBee LLC did not assume Gibraltar's debt. See APA at 3–4. To help Gibraltar pay its obligations, however, the APA provided that Gibraltar could keep its receivables for any work it had done prior to closing. See Compl., ¶ 57; see also APA at Schedule 1.3 (listing Gibraltar's assets excluded from APA).

Finally, both agreements included nearly identical integration or "merger" clauses disclaiming any other oral or written commitments that were made prior to those contracts' execution, but were not included in the final agreements. See APA at 17; IC Agreement at 9.

Notwithstanding the auspicious New Year's timing of the deal ("Hope smiles from the threshold of the year to come," 10 ALFRED LORD TENNYSON, WORKS, The Foresters 33 (1894)), things went south – and fast. In the early months of 2013, Pernice was given the cold shoulder by his new boss, McBee, and was "systematically cut out of communications, meetings, [and other] contact with McBee or other senior leader[s] . . . ." Compl., ¶ 65. Pernice also found that his former partner, Bovim, made himself scarce and, ostensibly in cahoots with McBee, took "affirmative action to isolate Pernice from participation in the new joint company . . . and ma[d]e the performance of the [IC Agreement] difficult or impossible . . . ." Id., ¶ 66. Despite Pernice's efforts to perform according to his (or, rather, Modena's) contractual obligations, he was handed a pink slip on June 5, 2013, which informed him that the IC Agreement had been terminated "for cause." Id., ¶ 75.

Adding insult to injury, the following month Pernice filed, on behalf of Gibraltar, a voluntary petition for Chapter 7 bankruptcy. See In re Gibraltar Assocs., LLC, No. 13-14937, ECF No. 1 (Bankr. C.D. Cal., Jul. 26, 2013). During those proceedings, he articulated his suspicions that the present Defendants had committed a number of wrongs against Gibraltar, including acts of "fraud, breach of contract, and other . . . wrongdoings." Id., ECF No. 27, at 2. Believing that the soon-to-be-liquidated LLC had a number of meritorious claims against Defendants, Pernice proposed to the bankruptcy Trustee that he be assigned all of the estate's legal claims arising from that wrongdoing in exchange for returning one third of any recovery he obtained. Id. But Defendants had a different idea. They proposed that, instead of assigning the

estate's litigation interests to Pernice, they would buy a release of all of the estate's claims against them for a flat $25,000. Id., ECF No. 40, at 2. Pernice consented to that settlement, making clear, however, that he reserved "all of his individual claims, if any, against" Defendants. Id., ECF No. 42, at 3–4.

With the bankruptcy case closed, Pernice and Modena filed the present suit. Counts I and II of the Complaint, neither of which Defendants currently seek to dismiss, consist of contract claims by Modena against McBee LLC for breach of the IC Agreement. In Count III, Plaintiffs allege that McBee and McBee LLC fraudulently induced Pernice to sign the APA, causing harm to both Plaintiffs by making promises that these two Defendants knew at the time they would not keep. Count IV consists of a civil-conspiracy claim by Pernice against Bovim, who is accused of making agreements with McBee to commit the fraud alleged in Count III. And finally, Count V alleges that all three Defendants were unjustly enriched by Pernice through their retaining the benefits of the deal. Defendants now move to dismiss the last three causes of action.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. See Fed. R. Civ. P. 10(c). Documents that a defendant attaches to a motion to dismiss are "part of the pleadings" under Rule 10(c) if they are integral to its claim, they are referred to in the complaint, and their authenticity is undisputed. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004); Hinton v. Corrs. Corp. of Am., 624 F. Supp. 2d 45, 46–47 (D.D.C. 2009). The Court may thus consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

## III. Analysis

The Court separately addresses each of the challenged counts: fraud, civil conspiracy, and unjust enrichment.

### A. Count III – Fraud

From a distance, Plaintiffs' fraud theory appears deceptively simple. They contend that, in order to convince Gibraltar to sell its assets, McBee LLC and its then owner, Steve McBee,

made a number of false promises to Pernice, whose approval was necessary to close the deal. But for those lies, Plaintiffs claim, Pernice would never have signed the APA, and thus the deal would never have gone through. As is often the case, however, the devil is in the details, which prove fatal to Plaintiffs' claim.

*1. Governing Law*

Before getting to the merits, the Court needs to clear up some confusion regarding which jurisdiction's laws apply to the fraud claim. The uncertainty stems in large part from the fact that a cause of action for "fraud in the inducement," which Plaintiffs allege here, may arise in both tort and contract. See In re Estate of McKenney, 953 A.2d 336, 341 (D.C. 2008) ("[A] person who [is] induced to enter into a contract by a misrepresentation has several common law causes of action, including fraud in the inducement sounding in tort and rescission sounding in contract."). The distinction between these two claims is important "because each action requires a different level of proof and allows for different remedies." Id. When the claim sounds in tort, "the defrauded party 'does not seek to undo the fraudulent transaction'" through rescission, a contract remedy, "'but [rather] claims sufficient compensation to make his position as good as it would have been had he not entered into the transaction at all.'" United Sec. Corp. v. Franklin, 180 A.2d 505, 510 (D.C. 1962) (quoting 5 WILLISTON ON CONTRACTS § 4264).

Here, Plaintiffs claim only a tortious harm, seeking damages stemming from Defendants' misrepresentations, see Compl., ¶ 97; id. at Prayer for Relief, rather than the undoing of the APA itself. Although the parties appear to agree on this point – and also that the laws of the District of Columbia "govern[] the tort claim," see Opp. at 10 n.2; Mot. at 12 – Plaintiffs muddy the waters by arguing that, because the contracting parties chose Delaware law to govern interpretation of the "[APA] and the rights and obligations of the parties [t]hereunder," APA at

18, ¶ 7.18, Delaware law must also control "issues arising under the contract" that are related to Plaintiffs' fraud claim. See Opp. at 10 n.2.

They are wrong. Because Plaintiffs' claim sounds in tort, it is not, by its nature, an "issue[] arising under the contract." Id. Instead, the tort claim is "collateral to the terms of the contract itself," Longview Dev. LP v. Great Atl. & Pac. Tea Co., Inc., No. 02-7422, 2004 WL 1622032, at *3 (E.D. Pa. July 20, 2004), and thus Delaware law has no bearing on the question of whether Plaintiffs have stated a claim for the tort of fraud in the inducement. In sum, District of Columbia law governs this count in all respects.

*2. Merits*

On to the pith. To state a claim for common-law fraud under D.C. law, Plaintiffs must allege: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." Hercules & Co., Ltd. v. Shama Restaurant Corp., 613 A.2d 916, 923 (D.C. 1992). For commercial entities dealing with each other at arm's length, any such reliance must also be (6) "objectively reasonable." Id. at 933. Finally, Plaintiffs must show (7) that they "have suffered some injury as a consequence of [their] reliance on the misrepresentation." Chedick v. Nash, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (citing Dresser v. Sunderland Apartments Tenants Ass'n, Inc., 465 A.2d 835, 839 (D.C. 1983)).

At the heart of Plaintiffs' fraud claim is a set of false promises made by agents of McBee LLC, which purportedly lured Pernice into signing away Gibraltar. But because fraud is a rather protean species of liability, the content and timing of those promises, along with their relationship to the contract at issue, are critical in determining whether Plaintiffs have stated an actionable claim in tort. More specifically, the Court must decide whether Plaintiffs can

demonstrate that any of the promises were material misrepresentations and that their reliance on those statements was objectively reasonable. Under the facts as alleged, they can show neither as a matter of law.

Plaintiffs highlight seven false promises that collectively induced Pernice's signature.[2] Some consist of general commitments regarding how McBee LLC would handle the acquisition, including that it would: (1) create a "combined corporate culture"; (2) continue to market Gibraltar's brand and market the company as "McBee Strategic-Gibraltar"; and (3) establish an equity fund for making strategic investments. See Compl., ¶ 92. Others are more specific to Pernice, such as guarantees that he would be entitled to: (4) a minimum of 18 months' worth of payments; (5) a leadership role in the new company; and (6) an equity interest in the new company within six to nine months. See id. Finally, Plaintiffs allege that (7) McBee stated that he "never intended to sell" the firm, see id. (emphasis added), albeit without asserting that he ever made a firm commitment to that effect.

The promises share two complementary features that bear on the elements of materiality and objective reasonableness. See Hercules, 613 A.2d at 923, 933. First, all were made in negotiations or discussions – *e.g.*, in the Letter of Intent – conducted before the parties executed the purchase agreement. See Compl., ¶ 92. Second, not one of these terms ultimately made its way into the APA. As a result, they fall squarely within the ambit of the APA's integration clause, which states, "This Agreement and the documents and instruments and other agreements specifically referred to herein . . . constitute the entire agreement among the parties . . . and

---

[2] Plaintiffs actually allege eight statements, not seven, see Compl., ¶ 92, but the last of those (subparagraph "h") cannot form the basis of a fraud claim: Plaintiffs merely describe certain actions taken by McBee after the combination without alleging that either a false statement or promise was made.

supersede all prior agreements and understandings, both written and oral . . . ." APA at 17, ¶ 7.13 (emphasis added). Plaintiffs are thus out of luck.

"When a written contract contains an [integration] clause, any alleged prior representations that a party will or will not do something in the future that are not included in that written contract generally do not support a fraud-in-the-inducement claim." Drake v. McNair, 993 A.2d 607, 624 (D.C. 2010). The reason is simple: if the party claiming fraud "'considered th[o]se assurances important enough to induce it to agree to the contract . . . [,] it could have conditioned its agreement on the explicit inclusion of those representations in the contract.'" Id. at 623 (quoting Hercules, 613 A.2d at 932). For the same reason, a party's reliance on such assurances in the face of an integration clause is also objectively unreasonable. Hercules, 613 A.2d at 934 ("[T]he reasons for holding that [plaintiff's] complaint was deficient as to the element of materiality apply equally to the question whether [its] reliance was reasonable.").

Under nearly identical circumstances, the court in In re U.S. Office Products Co. Securities Litigation, 251 F. Supp. 2d 77 (D.D.C. 2003), dismissed a fraudulent-inducement claim by former owners of a corporation who sold their shares as part of a merger agreement. The plaintiffs alleged that they were induced to sign the agreement in reliance on the defendants' false promises (concerning the acquiring corporation's future behavior) made during the negotiations leading up to the final sales contract. See id. at 85. But none of those promises was included in the final contract. See id. at 101. Because the parties were negotiating at arm's length, and thus were perfectly capable of "condition[ing] their contractual agreement on the inclusion of representations that each side deems material," any promises made prior to the contract – but ultimately excluded from its written terms – could not plausibly be statements of

"material" importance to the parties. Id. at 102. Nor, for that matter, did the parties act reasonably in relying on them. See id.

Although it is true that "an integration clause does not provide a blanket exemption to claims of fraud in the inducement," McNair, 993 A.2d at 624 (emphasis added), the exceptions to the general rule detailed above are inapplicable here. For example, where certain contract terms should have been included in the agreement but were "omitted from the contract by fraud," an integration clause is not a complete bar to suit. Hercules, 613 A.2d at 929. Here, however, the Complaint is devoid of any allegation that Defendants induced Pernice's signature by misrepresenting the agreement or concealing its key terms. And the Court is unwilling to indulge Plaintiffs' belated and conclusory assertion, made only in its Opposition, that the Defendants "fraudulently omitted" certain unspecified promises by "surreptitiously changing the agreement." Opp. at 17; see Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations and quotation marks omitted).

Finally, the Court rejects Plaintiffs' farfetched argument that neither Pernice nor Modena is a "sophisticated business entity," thus rendering the cases requiring "objectively reasonable" reliance inapposite. The argument is as inaccurate as it is immaterial. The D.C. Court of Appeals in Hercules did not hold that only "sophisticated business institutions," as a subset of all corporate entities generally, were held to the higher standard of objective reasonableness, but instead used the phrase as a proxy for "commercial dealings" in which parties bargain "at arm's length." 613 A.2d at 933. The Complaint identifies nothing to suggest that the deal was anything but an arm's-length commercial transaction between capable agents of unrelated corporate entities. See, e.g., Pepper v. Litton, 308 U.S. 295, 307 & n.14 (1939); PRINCIPLES OF

CORP. GOVERNANCE, Pt. V Introductory Note (1994) (describing duties and obligations owed a corporation when an influencer or decisionmaker in a given corporate transaction acts "with an interest in [the] matter"). At all stages of the negotiation, moreover, the parties were assisted by counsel, see Compl., ¶¶ 42–43, 49, and Plaintiffs repeatedly emphasized the business acumen possessed by both Pernice and Modena. See id., ¶¶ 9, 11.

As the Court will dismiss Plaintiffs' fraud claim on these grounds, it need not address Defendants' separate argument that Plaintiffs suffered no injury from the fraud on account of McBee LLC's purchase of Gibraltar's claims in Bankruptcy.

B. Count IV – Conspiracy

Seeking to saddle his erstwhile partner with liability for fraud, Pernice also alleged that Bovim committed civil conspiracy by working with McBee and his firm to "perpetrate the fraud on Pernice and Modena . . . ." Compl., ¶ 100. But "D.C. law does not provide an independent cause of action for [civil] conspiracy; instead, 'it is a means for establishing vicarious liability for [an] underlying tort'" – here, Plaintiffs' fraud claim. Kenley v. D.C., --- F. Supp. 3d ----, 2015 WL 1138274, at *11 (D.D.C. Mar. 13, 2015) (quoting Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 738 (D.C. 2000)). Because Pernice does not dispute that if the fraud claim fails, so does his action for conspiracy, see Opp. at 19, the Court need not belabor the point.

C. Count V – Unjust Enrichment

The final count challenged here is Pernice's claim for unjust enrichment against all three Defendants. He contends that Defendants were unjustly enriched because McBee LLC retained the assets it had acquired from Gibraltar under the APA. See Compl., ¶ 103. Despite the fact that Pernice was not himself a party to that transaction, he nevertheless asserts that the benefit

McBee LLC received under the APA "in justice and equity belong to Pernice." Id., ¶ 104 (emphasis added). Under D.C. law, which governs such a claim, "[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Peart v. D.C. Hous. Auth., 972 A.2d 810, 813 (D.C. 2009) (citation and quotation marks omitted). "Unjust enrichment is a common law equitable claim, available only where there is no adequate remedy at law." In re G-Fees Antitrust Litig., 584 F. Supp. 2d 26, 46 (D.D.C. 2008).

Pernice's unjust-enrichment claim faces three hurdles, which, taken together, prove an insuperable barrier. First, although it appears that the corporate Defendant, McBee LLC, did receive a benefit from Gibraltar under the APA, Pernice has not pled any facts suggesting that the individual Defendants retained a benefit from the deal. Second, and more fundamentally, Pernice fails to allege that whatever benefit was conferred by the APA belonged to him, rather than Gibraltar. Finally, even if the Court reads the Complaint to allege unjust enrichment by McBee LLC based on its retention of benefits conferred under the IC Agreement, Pernice is not the proper party to bring that claim either.

As an initial matter, Pernice has failed to allege that any benefit (regardless of where it came from) was conferred on the two individual Defendants, McBee and Bovim. As noted, the challenged transaction consists of a benefit belonging to Gibraltar – its assets purportedly "valued at $10–12 million" as "a successful going concern," Compl., ¶ 103 – which flowed to McBee LLC in exchange for $100,000. Pernice has not alleged that any of that benefit flowed to McBee or Bovim, and, given the sparseness of his allegations, the Court is unwilling to invent inferences that the individual Defendants invariably benefited from the transaction by virtue of their roles as either an equity owner or an employee of McBee LLC. See, e.g., Sabre Int'l Sec. v.

Torres Advanced Enter. Solutions, LLC, 60 F. Supp. 3d 36, 41–42 (D.D.C. 2014) (dismissing unjust-enrichment claim against individual defendants who worked for corporation where plaintiff failed to allege that "it conferred any benefit on the Individual Defendants directly" but only that it "conferred a benefit on [the defendant corporation], who subsequently paid salaries and bonuses to the Individual Defendants"); U.S. ex rel. Purcell v. MWI Corp., 520 F. Supp. 2d 158, 173 (D.D.C. 2007) ("[P]laintiff may only rely on an inference that a stockholder by means of his corporate equity received a benefit if the plaintiff shows that the stockholder abused the corporate form . . . ."). The claim thus cannot proceed against the individual Defendants.

Nor has Pernice pled facts showing that he, in his individual capacity, conferred any benefit on any of the Defendants, or that any benefit they received "in justice and equity belong[ed] to" Pernice. See 4934, Inc. v. D.C. Dep't of Emp't Servs., 605 A.2d 50, 55 (D.C. 1992). "[T]o recover on a [theory of unjust enrichment] . . . the plaintiff must show that [the defendant] was unjustly enriched at his expense . . . ." News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005) (citation and quotation marks omitted) (emphasis added); see also 26 R. Lord, WILLISTON ON CONTRACTS § 68:1 (4th ed. 2003) ("[C]ourts have generally allowed quasi-contractual recovery for services rendered when a party confers a benefit" on another party.) (emphasis added). Pernice alleges only that Gibraltar conferred a benefit on Defendants. The Delaware Limited Liability Company Act, under which Gibraltar was organized, moreover, provides that "[a] member has no interest in specific [LLC] property." Del. Code Ann. tit. 6, § 18-701. Instead, a member's interest comprises "a member's share of the profits and losses of [an LLC] and a member's right to receive distributions of the [LLC's] assets." Id., § 18-101(8). To the extent Pernice once possessed a derivative interest in

Gibraltar's assets, that interest has since been extinguished by its bankruptcy. See In re Gibraltar Assocs., LLC, No. 13-14937, ECF No. 49, at 1–2.

Pernice also appears to allege that McBee LLC unjustly retained benefits conferred by virtue of the IC Agreement between it and Modena. See Compl., ¶ 103 (contending that "other consideration [was] contemplated by the parties," such as "future revenues to Pernice and Modena, long term growth potential, and equity in the combined company"). But once again, Pernice fails to allege that he conferred any benefit on McBee LLC. The Complaint makes clear that the exchange was governed by an express agreement between Modena and McBee LLC, the breach of which is alleged in Counts I and II of the Complaint. While Modena might have pleaded unjust enrichment as an alternative to breach of contract, see ABA, Inc. v. D.C., 40 F. Supp. 3d 153, 172 & n.24 (D.D.C. 2014) (noting that "a plaintiff may plead unjust enrichment in the alternative" to a breach-of-contract theory unless the plaintiff fails to "challenge the validity or enforceability of the[] contract[]"), it has not done so here. Pernice, in sum, is simply not the proper party to bring suit on that basis. See Fladeboe v. Am. Isuzu Motors Inc., 150 Cal. App. 4th 42, 55 (2007), as modified (Apr. 24, 2007) (even where plaintiff is sole shareholder of a corporation, it lacks "standing to assert corporate claims, except in a derivative action"); Compl., ¶ 3 (noting that Modena "is a California S-Corporation").

* * *

Finally, the Court will deny Plaintiffs' request in their Opposition for leave to amend the Complaint. See Opp. at 28–29 ("[I]f the Court grants [Defendants'] motion[s] in whole or in part, any claims should be dismissed without prejudice, and Plaintiffs should be granted leave to amend its Complaint.") (citing Fed. R. Civ. P. 15(a)). "[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is

sought – does not constitute a motion within the contemplation of Rule 15(a)." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012) (citation and internal quotation marks omitted) (brackets in original).

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendants' Motion to Dismiss.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 26, 2015