UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS J. PERNICE, *et al.*,

　　Plaintiffs,

　　v.

ERIC BOVIM, *et al.*,

　　Defendants.

Civil Action No.  15-541 (JEB)

MEMORANDUM OPINION

As the Court explained in its prior Opinion in this case, the dispute here concerns the ill-fated union of two public-relations firms.  See Pernice v. Bovim, No. 15-541, 2015 WL 5063378, at *1 (D.D.C. Aug. 26, 2015).  After McBee Strategic Consulting, LLC terminated its relationship with Thomas Pernice and his holding company, Modena Holding Corp., Pernice and Modena sued for breach of contract, fraud, and other claims.  McBee responded with a Counterclaim of its own, similarly contending that Modena had breached their contract.  Having previously granted McBee's Motion to Dismiss all but the Complaint's contract claims, the Court now denies Modena's Motion to Dismiss the Counterclaim.  It believes that McBee has sufficiently pled a contract cause of action.

**I.    Background**

While for purposes of the prior Motion to Dismiss, the Court considered the facts alleged in the Complaint as true, it now must assume as true the facts alleged in McBee's Counterclaim. See Int'l Union v. Clark, 412 F. Supp. 2d 138, 144 (D.D.C. 2006).  In December 2012, McBee, a Washington lobbying and communications firm, acquired the assets and liabilities of Gibraltar Associates LLC, a public-relations firm founded by Thomas Pernice and Eric Bovim.  See

Countercl., ¶¶ 5-6.  In connection with this acquisition, McBee hired Bovim as an employee and Pernice as an Independent Contractor through his holding company, Modena.  Id., ¶¶ 8-9. McBee and Pernice (via Modena) formalized their relationship in an Independent Contractor Services Agreement (IC Agreement), executed on January 1, 2013.  Id., ¶¶ 9-10.  The IC Agreement listed Modena's general responsibilities and provided that McBee would pay a monthly retainer of $80,166.67 over an 18-month period.  Id., ¶ 11; Opp., Exh. A (IC Agreement) at 1-2, 11-12.  On July 6, 2013, McBee terminated the Agreement for cause, citing Modena's failure to cure deficiencies listed in a notice dated June 5, 2013.  See Countercl., ¶¶ 17, 19.  The notice informed Modena that it "had failed to perform satisfactorily under the Agreement" in several areas: "[t]ransitioning former clients"; "[a]ssisting with business development"; and "[c]ross-selling services and offerings between business units to existing clients."  Id., ¶ 18.

Following termination of the IC Agreement, Pernice and Modena sued McBee, its owner and chief executive, and Bovim – "each for some combination of breach of contract, fraud, civil conspiracy, and unjust enrichment."  Pernice, 2015 WL 5063378, at *1.  This Court granted McBee's Motion to Dismiss the latter three causes of action, leaving only Modena's breach-of-contract claim.  Id.  Accompanying its subsequent Answer to the Amended Complaint, McBee filed a Counterclaim, contending that Modena, too, had breached the IC Agreement by "fail[ing] to perform many, if not all, of the as signed tasks."  Countercl., ¶ 35.  Modena now moves to dismiss this Counterclaim.

**II.   Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. See Fed. R. Civ. P. 10(c). Documents that a defendant attaches to a motion to dismiss are "part of the pleadings" under Rule 10(c) if they are integral to its claim, they are referred to in the complaint, and their authenticity is undisputed. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004); Hinton v. Corrs. Corp. of Am., 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009). The Court may thus consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R.

3

Civ. P. 12(d); Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

**III.    Analysis**

McBee initially advanced two causes of action against Modena: breach of contract and fraud. See Countercl., ¶¶ 32-42. It has now withdrawn the latter, leaving only the contract dispute. See Opp. at 4 n.2. In the District of Columbia, "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Francis v. Rehman, 110 A.3d 615, 620 (D.C. 2015) (internal citation and quotation marks omitted). "However, to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." Id. In moving to dismiss, Modena contends that McBee has failed to meet this standard, first by failing to sufficiently plead a breach and second, by seeking a damages remedy that Modena believes is expressly unavailable under the terms of the contract. The Court considers each argument in turn.

   A.    Breach

Modena's challenge to McBee's allegation of breach focuses on two issues: the minimal performance it claims McBee acknowledges and the factual sufficiency of the Counterclaim.

   *1.    Minimal Performance*

Modena first contends that McBee has not sufficiently alleged that Modena breached the contract because McBee's allegation that Modena engaged in "minimal client pitches" and "minimal activity," Countercl., ¶ 18, constitutes an acknowledgment of satisfactory, albeit minimal, performance. See Mot. at 4, 7-8; Reply at 4-6. Such an argument misreads McBee's

position.  While Modena apparently interprets McBee to imply that Modena fulfilled its contractual obligations – *i.e.*, that its performance was minimally sufficient – McBee uses the word "minimal" to mean that Modena did not hold up its end of the bargain.  See Opp. at 8 ("Modena's assertion that it engaged in minimal client pitches, even if accepted as true, is not synonymous with minimal performance . . . .").

Semantics aside, in order to resolve the question of performance, the Court must first determine what the terms of the IC Agreement are.  Under District of Columbia law, which governs the dispute here, see IC Agreement, ¶ 21 ("This agreement shall be governed by and construed in accordance with the internal laws . . . of the District of Columbia . . . ."), if contractual terms are ambiguous, courts must resolve the ambiguity by examining extrinsic evidence, requiring a deeper factual analysis than is permitted at the motion-to-dismiss stage.  See District of Columbia v. D.C. Pub. Serv. Comm'n, 963 A.2d 1144, 1155-56 (D.C. 2009) ("[W]here a contract is ambiguous, . . . the meaning of the language must be evinced from extrinsic evidence on the intent of the parties – a factual determination."); Wharf, Inc. v. District of Columbia, No. 15-1198, 2015 WL 5693074, at *10 (D.D.C. Sept. 28, 2015) (denying motion to dismiss D.C. contract claim where contract was ambiguous).  A contract is ambiguous when "the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings . . . ." Joyner v. Estate of Johnson, 36 A.3d 851, 856 (D.C. 2012) (internal citation and quotation marks omitted).

Aside from requiring Modena to originate "a minimum of 2 meaningful pitches per quarter" to prospective clients of a certain McBee business unit, see IC Agreement at 11, the Agreement does not set forth minimal performance metrics for Modena's other duties.  It, instead, paints in broad strokes those duties, which include "participating in, originating, and/or

facilitating meaningful pitches to prospective clients" of McBee's other business units, and "[a]nalyz[ing] and provid[ing] ongoing strategic advice about opportunities to cross-sell services and product offerings between the various McBee Strategic business units." Id. The Counterclaim alleges that Modena "engaged in minimal client pitches" and "engaged in minimal activity, if any" to cross-sell between business units. See Countercl., ¶ 18. Without clear standards, however, it is difficult to discern what level of performance Modena and McBee bargained for when they executed the contract. Since such a determination depends upon the intent and understanding of the parties at the time of contracting, which in this case is unclear, the Court cannot resolve it at this stage of the proceedings.

Performance was similarly at issue in Hill v. Jupiter Esources, LLC, No. 05-1820-P, 2006 WL 2713793 (N.D. Tex. Sept. 21, 2006), in which an independent marketing specialist contested the scope of his responsibilities as set forth in his contract with a bankruptcy-data company. As "principal customer service contact," the marketing specialist was obliged to "routinely monitor and follow . . . [c]ustomers' involvement and satisfaction with [the product]." Id. at *5. The court determined that the contract language was ambiguous since the required "performance . . . could range from minimal contact with customers on rare occasions to daily interaction," with no such guidelines specified in the contract itself. Id. In denying a motion for summary judgment, the court held that the trier of fact should examine the parties' intent at the time of contracting to resolve ambiguity regarding the required level of performance. Id. at *6. As in Hill, the contract in the instant case does not quantify the level of performance required (except for the "minimum of 2 meaningful pitches per quarter" for a particular business unit), see IC Agreement at 11, and is thus "fairly susceptible of different constructions or interpretations." Joyner, 36 A.3d at 856. Dismissal is thus inappropriate on this ground.

### 2. *Sufficiency of Breach Allegation*

Modena also argues that the Counterclaim fails to meet the Rule 8 pleading standard since it "does not provide sufficient information to place Modena on notice to understand the grounds upon which it claims Modena breached the contract." Reply at 3. Such an argument gains no traction, particularly given the liberal pleading standard for contract claims in this jurisdiction. To survive a motion to dismiss a contract claim, the plaintiff must simply "describe the terms of the alleged contract and the nature of the defendant's breach." Francis, 110 A.3d at 620. The complaint must include enough information to "give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer[] [and] to prepare an adequate defense . . . ." Burnett v. Am. Fed'n of Gov't Emps., 102 F. Supp. 3d 183, 193 (D.D.C. 2015) (internal citation and quotation marks omitted). A complaint meeting these basic requirements will survive a motion to dismiss even if it is "imprecise or vague." Id. While the complaint in Burnett was "hardly a model of clarity," it met Rule 8 pleading requirements because it alleged the existence of a contract – payment in return for services – and breach – failure to pay the plaintiff. Id. at 192-93; see also Nattah v. Bush, 605 F.3d 1052, 1058 (D.C. Cir. 2010) (holding that plaintiff need not "plead every conceivable fact" to survive motion to dismiss).

McBee's Counterclaim clears this bar. When explaining its reason for terminating the IC Agreement, McBee describes in detail why it believes Modena failed to satisfy its contractual duties. See Countercl., ¶ 18. McBee recounts that it sent Modena a failure-to-perform notice on June 5, 2013, identifying the following areas of deficiency:

    a. Transitioning former clients of Gibraltar to McBee Strategic (one-third of projected revenue failed to transition);
    b. Assisting with business development for McBee Strategic (Modena had made minimal meaningful client pitches resulting in zero new revenue);

7

   c. Assisting with business development for McBee Strategic in other business units including lobbying, transactions, and Insight (Modena produced zero new revenue for other business units and engaged in minimal client pitches); and
   d. Cross-selling services and offerings between business units to existing clients (Modena had engaged in minimal activity, if any, and had achieved no meaningful results).

Id., ¶¶ 17-18.  McBee then terminated the IC Agreement one month later for cause.  Id., ¶ 19.  Since these tasks mirror Modena's contractual obligations listed in the IC Agreement, it is readily apparent which provisions of the IC Agreement McBee claims Modena breached.  See IC Agreement at 11.  These details undoubtedly give Modena "fair notice . . . of the claim being asserted" and the chance "to prepare an adequate defense," Burnett, 102 F. Supp. 3d at 193, which is all Rule 8 requires.

  The cases Modena cites do not hold otherwise, as the plaintiffs there failed to allege basic facts supporting breach of contract.  In Marranzano v. Riggs National Bank of Washington, D.C., 184 F.2d 349 (D.C. Cir. 1950), for instance, the plaintiff claimed her employer had breached their contract by terminating her without notice, but did not allege that the employer did not have cause to fire her or was required to provide notice.  The court, consequently, found that "[t]he complaint is wholly lacking in [facts showing a breach]."  Id. at 351.  In Logan v. LaSalle Bank National Association, 80 A.3d 1014 (D.C. 2013), similarly, the plaintiff's complaint did not survive because he had "identifie[d] neither a governing contractual provision, nor an action or omission constituting a material breach . . . ."  Id. at 1023-24.  Given McBee's detailed allegations and the concomitant obligations specified in the contract, these cases are easily distinguishable.

B.  Damages

Modena's next line of attack focuses on the damages element. It contends that McBee's sole remedy for Modena's alleged breach was to invoke the termination-for-cause provision of the IC Agreement, thus relieving McBee of any obligation to make further retainer payments due to Modena under the Agreement. See Reply at 6. As Modena sees it, McBee is not entitled to any further relief, including damages. See Mot. at 8.

For a contract remedy to be exclusive of other remedies, it must be apparent from the face of the contract that the parties intended to make it so. See Phenix-Georgetown, Inc. v. Charles H. Tompkins Co., 477 A.2d 215, 225-26 & n.34 (D.C. 1984) (reading contract as a whole in determining that indemnity provision was not exclusive remedy) (citing Bd. of Regents v. Wilson, 326 N.E.2d 216, 220 (Ill. App. 1975)); see also Bd. of Regents, 326 N.E.2d at 220 ("The contract . . . must clearly indicate that the intent of the parties was to make the stipulated remedy exclusive."); Miller v. U.S. Naval Inst., 423 A.2d 283, 287-88 (Md. App. 1980) (holding that liquidated-damages clause in real-property contract was not exclusive since "[n]othing in the language of [parties'] contract [] expressly forclose[d] [parties'] right to seek specific performance . . ."). Since the IC Agreement gives no indication that the parties intended the termination-for-cause provision to be an exclusive remedy, Modena's argument does not prevail.

In reaching this conclusion, the Court focuses on language in two sections of the contract. First, the termination-for-cause provision, detailed in the "Retainer Fee" and "Termination" sections of the IC Agreement, provides that "if [McBee] terminates [Modena]'s engagement for Cause, no advance written notice or severance payment is required." IC Agreement at 3. It says nothing else about remedies. The "Remedies" section of the Agreement, meanwhile, does not mention termination for cause, but it does give McBee "the right to an injunction or other

9

equitable relief in any court of competent jurisdiction, enjoining any such breach," and provides that "[t]he existence of this right shall not preclude any other rights and remedies at law or in equity . . . ." Id. (emphasis added). The IC Agreement thus does not state or imply that the termination-for-cause provision is McBee's only remedy if Modena fails to perform its contractual obligations. The contract, instead, plainly provides that the relief listed is not exclusive of other remedies at law, which naturally include damages for breach.

In Winmar Inc. v. Al Jazeera International, 741 F. Supp. 2d 165 (D.D.C. 2010), a court in this district held that a termination-for-convenience provision did not supplant the non-breaching party's common-law remedies for a breach of a construction contract. The court so found in part because the contract explicitly stated that the contract remedies did not limit other available legal remedies. Id. at 179; see also Phenix-Georgetown, 477 A.2d at 225 (D.C. 1984) (citing contract language preserving the parties' "rights and remedies available by law" in holding that indemnity provision was not exclusive). The Winmar contract also "include[d] no language suggesting that the remedies it provide[d] in the event of a termination for convenience [were] exclusive of a contractor's common law remedies . . . ." Winmar, 741 F. Supp. 2d at 179. That the termination-for-cause provision is not included in the Remedies section of the contract bolsters McBee's argument that it is simply a "procedural provision regarding termination," rather than an exclusive remedy for breach. See Opp. at 8; IC Agreement at 1-3, 8.

Since neither the structure nor the language of the IC Agreement indicates that the termination-for-cause provision is exclusive, McBee may seek damages for Modena's alleged breach.

10

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Modena's Motion to Dismiss as to the contract claim.

                                       /s/ *James E. Boasberg*
                                       JAMES E. BOASBERG
                                       United States District Judge

Date:  April 22, 2016